UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DR. GERALD R. FINKEL, as Chairman of the
Joint Industry Board of the Electrical Industry,

                Petitioner,                        REPORT AND
                                                                                                     RECOMMENDATION
   -against-
                                                                                                     20 CV 32 (RPK)(RML)
UPTOWN COMMUNICATIONS & ELECTRIC,
INC.,

                Respondent.
------------------------------------------------------------X
LEVY, United States Magistrate Judge:

        Petitioner Dr. Gerald R. Finkel, as Chairman of the Joint Board of the Electrical Industry ("JIB"), commenced this action pursuant to section 502(a)(3) of the Employment Retirement Income Security Act of 1974 ("ERISA"), codified as amended, 29 U.S.C. § 1132, and section 301 of the Labor Management Relations Act, codified as amended, 29 U.S.C. § 185, to confirm and enforce an arbitration award entered in favor of JIB against respondent Uptown Communications & Electric, Inc. ("Uptown"). By order dated November 17, 2020, the Honorable Rachel P. Kovner, United States District Judge, referred petitioner's motion for default judgment to me for report and recommendation. For the reasons explained below, I respectfully recommend that petitioner's motion be granted.

## BACKGROUND AND FACTS

        JIB is the administrator and fiduciary of various employee benefit multiemployer plans established and maintained pursuant to a collective bargaining agreement ("CBA") between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO

("the Union"), and certain employers in the electrical and other related industries. (Petition to Confirm Arbitration Award, dated Jan. 9, 2020 (the "Petition" or "Pet."), Dkt. No. 1, ¶ 5.)

Pursuant to the CBA, JIB receives directly from each signatory employer a weekly remittance consisting of contributions to each of the ERISA plans as well as a Union assessment collected by the signatory employer from each Union member. (Id. ¶ 6.) Also pursuant to the CBA, each employer is required to remit to the Deferred Salary Plan ("DSP") a specified percentage of the weekly wage of each eligible employee, plus any additional salary deferrals made at the election of the employee ("Employee Contributions"). (Id. ¶ 8.) And, employers are required to remit employer contributions to the DSP on behalf of all covered employees ("Employer Contributions"). (Id.) Additionally, when applicable, JIB collects employee loan payments due to the Union and certain plans and contributions to fund the operation of JIB ("Non-ERISA Plans"). (Id. ¶ 9.) Each employer's contributions to the ERISA plans, the Union assessment remittances, and the non-ERISA plan contributions are collectively known as the "JIB Contributions." (Id. ¶ 12.) The JIB Contributions, together with the DSP Contributions, are "required contributions" under the CBA. (Id.) The CBA requires respondent to make the Required Contributions for all work within the trade and geographical jurisdiction of the Union and to submit weekly payroll reports providing the name, gross wage, and hours worked for each worker employed by the company on whose behalf the Required Contributions are made. (Id. ¶ 17.)

The CBA includes a Collection Policy that allows JIB to use a prior week's payroll report to calculate the amount of contributions due from an employer if the employer fails to remit contributions and has not submitted payroll reports for such unpaid contributions. (Pet. ¶¶ 18-20; Collection Policy, attached to Pet. as Ex. B, Dkt. No. 1-2.) Additionally, the

Collection Policy establishes the rate at which interest on delinquent contributions is to be calculated, and it provides that an employer shall be liable for liquidated damages and attorney's fees and costs if legal action is commenced. (Pet. ¶¶ 21-22.)

In the event of a dispute concerning an employer's obligations, the CBA has Arbitration Procedures. (See id. ¶¶ 18, 20.) The Arbitration Procedures provide that an arbitrator "shall have the jurisdiction to determine any dispute between the [sic] JIB against an Employer, related to the Employer's obligation to contribute to the Funds, including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorneys' fees and costs." (Id. ¶ 24; Arbitration Procedures, attached to Pet. as Ex. C, Dkt. No. 1-3.) The Arbitration Procedures also provide that if the arbitrator finds in whole or in part for JIB, the employer shall be liable for the arbitrator's fees and JIB's attorney's fees and costs. (Pet. ¶ 25.)

Pursuant to the Arbitration Procedures and Collection Policy, petitioner initiated arbitration proceedings when respondent failed to remit required contributions for the period from payroll week ending July 10, 2018 to payroll week ending September 4, 2019. (Id. ¶¶ 26-27.) A hearing was held on November 5, 2019 before Thomas J. Lilly, Jr., the designated arbitrator. (Id. ¶ 27, 29.) Petitioner was represented by counsel, and respondent, despite receiving proper notice, did not appear. (Id. ¶¶ 27-29.) The arbitrator issued an award on November 18, 2018 and found that respondent was liable to petitioner for $138,585.14, consisting of: (1) required contributions of $107,236.01; (2) interest of $4,535.26; (3) liquidated damages of $21,447.20; (4) legal fees and costs of $3,966.67; and (5) an arbitrator fee for decision of $1,400. (Id. ¶¶ 31-32; Arbitration Award, attached as Ex. G to Pet. (the "Award"), Dkt. No. 1-7.)

3

Since the Award was issued, respondent remitted a portion of the JIB Contributions for payroll weeks ending September 4, 2019 through September 11, 2019 and DSP Contributions for payroll weeks ending September 4, 2019 through October 30, 2019. (Declaration of Christina Sessa, Esq., dated Nov. 17, 2020 ("Sessa Decl."), Dkt. No. 14, ¶ 33; Declaration of Nicole Marimon, Esq., dated Nov. 17, 2020 ("Marimon Decl."), Dkt. No. 15, ¶ 11.) Respondent has otherwise failed to pay petitioner in accordance with the Award. (See generally Memorandum in Support of Motion for Default Judgment, dated Nov. 17, 2020 ("Mem."), Dkt. No. 16; Petition.) Accordingly, respondent owes petitioner the remaining Award balance of $112,611.79. (Sessa Decl. ¶ 34; Marimon Decl. ¶ 11.)

On January 2, 2020, petitioner commenced this action to obtain confirmation of the Award. (See Petition.) Petitioner also seeks damages of $138,585.14 plus interest from the date of the Award through the date of judgment as well as attorney's fees and costs. (Mem. at 5; see also Petition.) Respondent has not answered or otherwise moved with respect to the Petition. (Declaration of Nicole Marimon, Esq., dated Nov. 3, 2020, Dkt. No. 11-1, ¶ 3.) The Clerk of the Court noted respondent's default pursuant to Federal Rule of Civil Procedure 55(a) on November 9, 2020. (Clerk's Entry of Default, dated Nov. 9, 2020, Dkt. No. 12.) On November 17, 2020, petitioner moved for default judgment. Judge Kovner referred petitioner's motion to me for report and recommendation on November 18, 2020. (Order Referring Motion, dated Nov. 18, 2020.)

## DISCUSSION

### A. Legal Standard

A respondent's default "is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155,

4

158 (2d Cir. 1992). Once a default is entered, the court "is required to accept all of [petitioner's] factual allegations as true and draw all reasonable inferences in [petitioner's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). The court must also "determine whether [petitioner's] allegations establish [respondent's] liability as a matter of law." Id. If liability has been established, a motion for default judgment is "left to the sound discretion of [the] district court . . . ." Shah v. N.Y. Dep't of Civil Serv., 168 F.3d 610, 615 (2d Cir. 1999) (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993)).

The Second Circuit has held that "default judgments in proceedings to confirm arbitration awards 'are generally inappropriate.'" Laundry, Dry Cleaning Workers & Allied Indus. Health Fund v. Stain Less, Inc., No. 07 CV 3202, 2008 WL 782758, at *1 (E.D.N.Y. Mar. 20, 2008) (quoting D.H. Blair & Co v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006)). Instead, a motion for default judgment should be treated as an unopposed motion for summary judgment. D.H. Blair, 462 F.3d at 109-10. "Courts in this judicial district have nevertheless acknowledged that where, as here, the respondent defaulted in both the underlying arbitration and the confirmation action itself, 'the distinction between moving for default judgment and moving for summary judgment in confirmation of an arbitration proceeding is purely academic.'" Matter of Arb. Between State Enter. Rsch.-Indus. Complex "Pavlograd Chem. Plant" v. Petroleum & Materials LLC, No. 18 CV 2510, 2019 WL 1261783, at *4 (E.D.N.Y. Feb. 12, 2019) (quoting Trs. of UNITE HERE Nat'l Health Fund v. New Age Intimates, Inc., No. 07 CV 2892, 2008 WL 3833841, at *4 (E.D.N.Y. Aug. 14, 2008)), report and recommendation adopted sub nom. State Enter. Rsch.-Indus. Complex "Pavlograd Chem. Plant" v. Petroleum & Materials LLC, 2019 WL 1262751 (E.D.N.Y. Mar. 19, 2019). See also Finkel v. Millennium Fire Servs., LLC, No. 18 CV

5

3538, 2019 WL 1605186, at *2 (E.D.N.Y. Mar. 29, 2019); OOO FC Grand Capital v. Int'l Pharm. Servs. Ltd., No. 16 CV 6156, 2017 WL 8813135, at *4 (E.D.N.Y. Dec. 15, 2017), report and recommendation adopted, 2018 WL 879027 (E.D.N.Y. Feb. 14, 2018); Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Coop., Pension & Welfare Funds v. Overhead Door Co. of Erie Cty., No. 12 CV 5652, 2013 WL 4807087, at *3 (E.D.N.Y. Sept. 9, 2013); Trs. of Local 807 Labor Mgmt. Health Fund v. Express Haulage Co., No. 07 CV 4211, 2008 WL 4693533, at *3 (E.D.N.Y. Oct. 23, 2008).  I agree with those courts that have held the default judgment standard appropriate in cases where respondent defaulted in both the underlying arbitration and the confirmation action.

    B.  Analysis

        1.  Default Judgment

"29 U.S.C. § 185(a) confers jurisdiction on federal district courts to confirm and enforce labor arbitration agreements." Finkel, 2019 WL 1605186, at *3 (citing Local 802, Associated Musicians v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1998)).  Per the Arbitration Procedures, respondent agreed to submit to binding arbitration in the event of a dispute concerning its contribution obligations.  (See Arbitration Procedures, Sect. II.E.)  The Arbitration Procedures specify that the failure of any party properly noticed to appear at a hearing "shall in no way limit the Neutral Arbitrator's Authority to hear Disputes and render a fully binding ruling on all parties, and shall in no way limit the non-appearing party's liability." (Id., Sect. II.D.)  Petitioner established that respondent had notice of the arbitration and failed to appear.  (Pet. ¶¶ 27-29; Notice of Intent to Arbitrate, dated Sept. 9, 2019, annexed as Ex. D to the Sessa Decl., Dkt. No. 14-4; see also Award at 2, 6.)  The arbitration was held in accordance with the Arbitration Procedures, and the arbitrator rendered an award.  (See generally Award.)

6

Petitioner timely applied to this court for confirmation of the award. Respondent, despite having been properly served, has failed to appear in this proceeding. Courts in this district have found such facts sufficient to establish that petitioner is entitled to a default judgment. See, e.g., Finkel, 2019 WL 1605186, at *3. Accordingly, I respectfully recommend that petitioner's motion for default judgment be granted.

2. Confirmation of the Arbitration Award and Damages

Petitioner requests confirmation of the Award and damages of $138,585.14 for the unpaid portion of the Award. (See Mem. at 4-5.) Confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984). Courts must grant an arbitrator's decision "great deference." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003). The arbitrator's rationale need not be explained, and the award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case." D.H. Blair, 462 F.3d at 110 (quoting Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir. 1991)). Only "a barely colorable justification for the outcome reached is necessary to confirm the award." Id.

After examining petitioner's submissions, I find that there is more than a barely colorable justification for the Award. At the November 5, 2019 arbitration hearing, which respondent did not attend, petitioner put forth as evidence: (1) the CBA; (2) the Arbitration Procedures; (3) the Notice of Intention to Arbitrate; (4) an Affidavit of Service showing that the Notice of Intention to Arbitrate was served on the Respondent on September 9, 2019; (5) testimony regarding service; and (5) testimony concerning the amounts claimed as of the day of the hearing. (See Award at 2-3, 5-6.) After reviewing the evidence submitted by petitioner, the

7

arbitrator determined that JIB had proven by a preponderance of the evidence that the amounts alleged were due, and that respondent had failed to pay the amounts due in accordance with the applicable agreements and procedures. (See Award at 6.) As per the Arbitration Procedures, the arbitrator awarded petitioner the unpaid contributions, interest, liquidated damages, attorney's fees and costs, and arbitrator's fees for a total Award of $138,585.14.[1] (Id. at 6-7.) Because I find nothing in the record that would cause the court to question the Award, I respectfully recommend that the Award be confirmed, and respondent be ordered to pay the remaining total Award amount.[2]

3. Attorney's Fees and Costs

Petitioner requests attorney's fees of $5,912 for work associated with this confirmation proceeding. (Mem. at 5, 7.) The Collection Policy provides that petitioner is entitled to costs and reasonable attorney's fees incurred in confirming an arbitration award.

---

[1] The total Award amount was itemized as follows: (1) unpaid required contributions of $107,236.01, (2) interest on the unpaid contributions of $4,535.26, (3) liquidated damages of $21, 447.20, (4) attorney's fees and costs of $3,966.67, and (5) arbitrator's fees of $1,400. (See Award at 7.)

[2] Petitioner requests interest from the date of the Award through the date of judgment. (Marimon Decl. ¶ 20; see also Petition.) "[W]ithin the Second Circuit there is a 'presumption in favor of prejudgment interest' where the arbitration agreement states that an arbitration decision is 'final and binding.'" Finkel, 2019 WL 1605186, at *5 (quoting Local 355 United Serv. Workers Union v. Certified Climate Control Sys., Inc., No. 15 CV 00654, 2016 WL 806074, at *11 (E.D.N.Y. Feb. 10, 2016), report and recommendation adopted, 2016 WL 843290 (E.D.N.Y. Mar. 1, 2016); see also Trs. of Empire State Carpenters Annuity, Apprenticeship, Lab.-Mgmt. Cooperation, Pension & Welfare Funds v. Tri-State Acoustics Corp., No. 13 CV 05558, 2014 WL 4537481, at *7 (E.D.N.Y. Sept. 11, 2014) (awarding prejudgment interest on arbitration award). Because the Arbitration Procedures state that an arbitration award is final and binding, I find that petitioner is entitled to prejudgment interest on the remaining balance of the arbitrator's award. (See Arbitration Procedures, Sect. IX.B.) However, petitioner has not provided calculations for prejudgment interest or proposed how prejudgment interest should be calculated in this case. Absent further explanation from petitioner, I decline to recommend an award of prejudgment interest; however, petitioner may submit interest calculations on or before July 31, 2021.

(Sessa Decl. ¶ 22; Collection Policy, Art. II.E.2.) Moreover, "[w]hen a party fails to abide by an arbitrator's decision without justification, attorney's fees and costs may be awarded." N.Y.C. & Vicinity Dist. Council of Carpenters v. Sukhmany Constr. Inc., No. 16 CV 6360, 2018 WL 2078479, at *6 (E.D.N.Y. Jan. 29, 2018) (internal quotation marks omitted) (collecting cases), report and recommendation adopted, 2018 WL 1459457 (E.D.N.Y. Mar. 23, 2018).

In calculating a reasonable fee award, the court must first establish a reasonable hourly rate, which is "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 184 (2d Cir. 2008). Reasonable hourly rates are determined by reference to fees in the community in which the action is pending and to the skill and experience of the attorneys who worked on the matter. Luciano v. Olsten Corp., 109 F. 3d 111, 115-16 (2d Cir. 1997). The party seeking fees bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (2d Cir. 1983)). "Courts have broad discretion to assess the reasonableness of each component of a fee award." Jaramillo v. Banana King Rest. Corp., No 12 CV 5649, 2014 WL 2993450, at *8 (E.D.N.Y. July 2, 2014).

The court is required to look to the hourly rates that are commonly charged for comparable work in the Eastern District of New York. See Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 175-77 (2d Cir. 2009). Here, petitioner's request is for fees based on a rate of $350 per hour for the work of Nicole Marimon, a partner at Virginia & Ambinder LLP ("V&A") with seven years of experience in ERISA litigation, and $120 per hour for the work of paralegals and law clerks. (Marimon Decl. ¶¶ 14-15.) I find the hourly rate for Ms. Marimon reasonable based on the prevailing rates in this district. See, e.g., Finkel, 2019 WL 1605186, at *4 (finding

9

$350 to be a reasonable hourly rate for Ms. Marimon); Trs. of Local 522 Pension Fund v. Consol. Cos., No. 17 CV 1991, 2018 WL 2078117, at* 9 (E.D.N.Y. Feb. 6, 2018) (finding $350 to be a reasonable hourly rate a partner with ERISA experience), report and recommendation adopted, 2018 WL 1521775 (E.D.N.Y. Mar. 27, 2018); Trs. of Local 522 Pension Fund v. Bayway Lumber & Home Ctr., No. 16 CV 5286, 2017 WL 9511077, at *6 (E.D.N.Y. July 25, 2017) (finding $325 to be a reasonable hourly rate for a partner with over twenty years of employment law experience), report and recommendation adopted, 2017 WL 4075182 (E.D.N.Y. Sept. 14, 2017).  The rate requested for the paralegals and law clerks, however, is higher than what is typically granted in this district.  See, e.g., Finkel, 2019 WL 1605186, at *4 (awarding V&A a rate of $100 per hour for paralegals in a similar case); Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Cooperation Funds v. CEI Contractors, Inc., No. 18 CV 3467, 2019 WL 117603, at *6 (E.D.N.Y. Jan. 7, 2019) (same); Trs. of Ne. Carpenters Health, Pension Annuity, Apprenticeship, and Labor Mgmt. Coop. Funds v. Northcoast Maint. Corp., 17 CV 5072, 2018 WL 2471201, at *4 (E.D.N.Y. May 4, 2018) (noting that courts in this district typically award hourly rates ranging from $100 to $300 for associates and $70 to 100 for paralegals), report and recommendation adopted, 2018 WL 2465351 (E.D.N.Y. June 1, 2018).  Accordingly, I respectfully recommend that the rate for paralegals and law clerks be reduced to $100 per hour.

Petitioner seeks compensation for 25.5 hours of work: 12.4 by Ms. Marimon, 8.3 by the law clerk, and 4.8 by the paralegals.  (Marimon Decl. ¶ 17; Time Records, annexed as Exhibit K to the Marimon Decl., Dkt. No. 15-4.)  Based on the contemporaneous time records submitted, I find the time expended by counsel to be reasonable.  As such, I respectfully recommend that petitioner be awarded $5,912 in attorney's fees.

Petitioner additionally requests costs of $472.99, consisting of this court's filing fee of $400, service of process fees of $70, and other litigation-related fees of $2.99. (Marimon Decl. ¶ 18; Time Records.) I find these costs to be reasonable and respectfully recommend that petitioner's request be granted.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that petitioner's motion for default judgment be granted and the Award confirmed in all respects. I further recommend that respondent be ordered to pay petitioner the total remaining Award amount of $112,611.79 as well as attorney's fees of $5,912 and costs of $472.99. I decline to recommend an award of prejudgment interest at this time, but petitioner may submit interest calculations on or before July 31, 2021 for consideration.

Any objections to this report and recommendation must be filed within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d). Petitioner is directed to serve copies of this Report and Recommendation on the defaulting respondent within ten days of the date of this Report and Recommendation and to file proof of service by ECF.

Respectfully submitted,

/s/
ROBERT M. LEVY
Unites States Magistrate Judge

Dated: Brooklyn, New York
      July 19, 2021